IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| REDSTONE FEDERAL CREDIT UNION,<br><br>    Appellant,<br>v.<br><br>MANUEL WHITED and CONNIE WHITED,<br><br>    Appellees. | Case No.: 5:17-cv-00496-MHH |

## MEMORANDUM OPINION AND ORDER

Redstone Federal Credit Union appeals from the Bankruptcy Court's order overruling Redstone's objection to Mr. Manuel Whited and Ms. Connie Whited's claim of exemptions and the Bankruptcy Court's order denying Redstone's motion to alter or amend judgment. For the following reasons, the Court affirms the Bankruptcy Court's orders.

**I.  JURISDICTION AND STANDARD OF REVIEW**

The Court has jurisdiction over Redstone's appeal under 28 U.S.C. § 158(a)(1). Section 158(a)(1) states: "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a)(1).

When it reviews final decisions of a bankruptcy court, the district court functions as an appellate court. *In re Piper Aircraft Corp.*, 362 F.3d 736, 738 (11th Cir. 2004). "In reviewing a bankruptcy court judgment as an appellate court, the district court reviews the bankruptcy court's legal conclusions *de novo*." *In re Englander*, 95 F.3d 1028, 1030 (11th Cir. 1996).

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On October 23, 2013, Redstone obtained a $76,768.02 judgment against the Whiteds. (Doc. 1-4, p. 2, ¶ 1). On December 2, 2013, Redstone recorded the judgment in Jackson County, Alabama. (Doc. 1-4, p. 2, ¶ 1). By recording the judgment, Redstone obtained a lien on Mr. Whited's homestead property. (Doc. 5, p. 6). Mr. Whited owned the homestead property before Redstone obtained and recorded the judgment. (Doc. 5, p. 6). When Redstone obtained and recorded the judgment, Alabama's homestead exemption was $5,000 for individuals and $10,000 for jointly owned property. (Doc. 1-4, p. 2, ¶ 1); Ala. Code § 6-10-2.

On June 11, 2015, the Alabama Legislature increased the state's homestead exemption amounts to $15,000 for individuals and $30,000 for jointly owned property. (Doc. 1-4, p. 2, ¶ 2). The same day, the Alabama Legislature enacted Alabama Code § 6-10-12, which provides that every three years, the State Treasurer shall adjust the homestead exemption amount "to reflect the cumulative change in the consumer price index . . . . The adjusted amounts apply to

exemptions claimed on or after April 1 following the adjustment date."

On August 25, 2016, the Whiteds filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Alabama. (Doc. 1-4, p. 2, ¶ 2). Creditors filed proofs of claim in the Whiteds' Chapter 13 case for debts that arose both before and after the effective date of Alabama's new homestead exemption. (Doc. 1-4, p. 9, ¶ 27). On September 2, 2016, Redstone filed in the Whiteds' Chapter 13 case a proof of claim secured by the judgment lien on Mr. Whited's property. (Doc. 1-4, p. 2, ¶ 6).

On September 7, 2016, the Whiteds claimed the $30,000 jointly owned property homestead exemption in the property encumbered by Redstone's judgment lien. (Doc. 1-4, p. 2, ¶¶ 3, 5). On October 7, 2016, Redstone objected to the Whiteds' claim of the $30,000 homestead exemption. (Doc. 3-3). In its objection, Redstone argued that the Whiteds' homestead exemption should be limited to $10,000, the exemption amount for jointly owned property in force when Redstone obtained and recorded its judgment. (Doc. 3-3, p. 1, ¶ 6).[1] As support for its objection, Redstone asserted that because Alabama Code § 6-10-1 "specifically states: 'The right of homestead or other exemption shall be governed

---

[1] On November 2, 2016, the Whiteds reduced their claim of exemption to $15,000, the new homestead exemption for individually owned property, because Ms. Whited did not own an interest in the property. (Doc. 1-4, p. 2, ¶ 4). Because the Whiteds subsequently reduced their claim of exemption to $15,000, the homestead exemption for individually owned property on the petition date, Redstone now argues that the Whiteds' claim of exemption should be limited to $5,000, the homestead exemption for individually owned property when Redstone recorded its judgment lien. (Doc. 3-5, p. 6).

by the law in force when the debt or demand was created,'" the Whiteds could only claim the homestead exemption in force when the judgment lien fixed to Mr. Whited's property. (Doc. 3-3, p. 1, ¶ 5).

The Whiteds opposed Redstone's objection. (Doc. 3-4). The Whiteds argued that they incurred debt after July 11, 2015, the effective date of the new homestead exemption. (Doc. 3-4, p. 1, ¶ 1). Pursuant to *In re Middleton*, 544 B.R. 449 (Bankr. S.D. Ala. 2016), the Whiteds assert that they are entitled to the $15,000 homestead exemption in force when they filed for bankruptcy. (Doc. 3-4, p. 1, ¶ 1). And pursuant to *Owen v. Owen*, 500 U.S. 305 (1991), the Whiteds assert that the Bankruptcy Court should "utilize the State Court exemptions to which the Debtors would be entitled but for the existence of the lien." (Doc. 3-4, p. 1, ¶ 2). According to the Whiteds, "[u]nder this standard, the [Bankruptcy] Court should apply a $15,000 homestead exemption." (Doc. 3-4, p. 1, ¶ 2).

On February 2, 2017, the Bankruptcy Court overruled Redstone's objection. (Doc. 1-4). The Bankruptcy Court found "pursuant to [*Owen*] that Alabama's 'new' homestead exemption in effect on the petition date is controlling for purposes of any action the [Whiteds] may file to avoid Redstone's judgment lien pursuant to 11 U.S.C. § 522(f)." (Doc. 1-4, p. 1). The Bankruptcy Court noted that 11 U.S.C. § 522(f)(1) states that "the debtor may avoid the *fixing of a lien* on an interest of the debtor in property to the extent that such lien impairs an

exemption to which the debtor *would have been entitled . . . .*" (Doc. 1-4, p. 3, ¶ 7) (emphasis in original). The Bankruptcy Court held that the exemption amount to which the debtor "would have been entitled" is the exemption amount "on the date of filing the petition." (Doc. 1-4, p. 5, ¶ 14). The Bankruptcy Court found that the Whiteds would have been entitled to the $15,000 exemption on the date they filed their petition. (Doc. 1-4, p. 10, ¶ 30).

The Bankruptcy Court reasoned that "in 'mixed debt' cases," where debts are incurred before and after the effective date of the new homestead exemption, "the exemption limits on the petition date should be applied despite § 6-10-1's 'date of debt' provision." (Doc. 1-4, p. 7, ¶ 20). The Bankruptcy Court discussed and agreed with the reasoning in *Middleton*. The *Middleton* court held that applying the petition date exemption in mixed debt cases is consistent with the Bankruptcy Code which establishes rights as of the petition date and with the Code's "fresh start" policy. (Doc. 1-4, pp. 8-9, ¶¶ 25-26).

On February 10, 2017, Redstone asked the Bankruptcy Court to alter or amend the order overruling Redstone's objection in light of the Eleventh Circuit's holding on remand in *In re Owen*, 961 F.2d 170 (11th Cir. 1992). (Doc. 3-8, p. 1). Redstone stated that "the [Eleventh] Circuit, on remand, . . . ruled that, since the Debtor had no interest in the property prior to the fixing of the lien, there was no exemption available." (Doc. 3-8, p. 2). Redstone asked the Bankruptcy Court to

5

"consider whether the change in the exemption amount altered [Mr. Whited's] interest in the property [versus] that of Redstone and to what extent." (Doc. 3-8, p. 2). Redstone argued that "[i]f the change in the exemption amount increased [Mr. Whited's] interest, then the proper response to that increase is to note that, since Redstone's lien attached prior to that increase, the lien cannot be avoided to that extent, as [Mr. Whited] did not have this interest 'prior to the fixing of the lien.'" (Doc. 3-8, p. 2).

On March 17, 2017, the Bankruptcy Court denied Redstone's motion to alter or amend judgment. (Doc. 1-3). The Bankruptcy Court found that "the controlling issue in this case remains whether Redstone's lien impairs an exemption to which [the Whiteds] would have been entitled on the petition date but for the lien itself." (Doc. 1-3, p. 3). The Bankruptcy Court repeated that the Whiteds would be entitled to the $15,000 homestead exemption but for Redstone's lien. (Doc. 1-3, p. 7).

On March 29, 2017, Redstone appealed from the Bankruptcy Court's order overruling Redstone's objection to the claim of exemption and the Bankruptcy Court's order denying Redstone's motion to alter or amend judgment. The issues on appeal are fully briefed and ripe for resolution.

## III. ANALYSIS

### 1. Redstone's Objection to the Whiteds' Claim of Exemption

Redstone argues that the Whiteds can claim only the homestead exemption in effect when Redstone obtained its judgment. The Court disagrees. The Bankruptcy Court properly found that applying Alabama's new homestead exemption in a mixed debt case like this one fulfills the objectives of the Bankruptcy Code and is consistent with *Owen*.

Pursuant to 11 U.S.C. § 522(f)(1), a "debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor *would have been entitled* under subsection (b) of this section . . . ." (emphasis added). Pursuant to subsection (b), exempt property is determined according to State law that is "applicable on the date of the filing of the petition . . . ." 11 U.S.C. § 522(b)(3)(A). In *Owen v. Owen*, 500 U.S. 305 (1991), the Supreme Court found that the exemption to which the debtor would be entitled under state law is the exemption to which the debtor would be entitled *but for the lien*. 500 U.S. at 311.

The debtor in *Owen* purchased a condominium subject to the creditor's pre-existing judgment lien. On the date of purchase, the condominium did not qualify as a homestead under Florida law. Then, the debtor filed for Chapter 7 bankruptcy. Later, the condominium achieved homestead status.

7

The debtor claimed a homestead exemption in his condominium and sought to avoid the creditor's lien pursuant to 11 U.S.C. § 522(f)(1). The bankruptcy court did not allow the debtor to avoid the lien. *Owen*, 500 U.S. at 307-08. The district court affirmed the bankruptcy court's decision because the property did not become subject to Florida's new homestead exemption until after the lien fixed to the property. *Id.* The Eleventh Circuit affirmed on the same grounds. *Id.* at 308.

The Supreme Court reversed the Eleventh Circuit's decision. *Owen*, 500 U.S. at 314. The Supreme Court found that § 522(f) permits a debtor to avoid a lien to the extent that the lien impairs an exemption to which the debtor "*would have been* entitled but for the lien itself":

> As the preceding italicized words suggest, this reading is more consonant with the text of § 522(f)-which establishes as the baseline, against which impairment is to be measured, not an exemption to which the debtor "*is* entitled," but one to which he "*would have been* entitled." The latter phrase denotes a state of affairs that is conceived or hypothetical, rather than actual, and requires the reader to disregard some element of reality. "Would have been" *but for what*? The answer given, with respect to the federal exemptions, has been *but for the lien at issue*, and that seems to us correct.

*Owen*, 500 U.S. at 311 (emphasis in original).

When determining the exemption to which a debtor would be entitled, "the only conceivable fact we are invited to disregard is the existence of the lien." *Owen*, 500 U.S. at 311. The Supreme Court had "no doubt, then, that the [bankruptcy courts'] unanimously agreed-upon manner of applying § 522(f) to

8

federal exemption—ask first whether avoiding the lien would entitle the debtor to an exemption, and if it would, then avoid and recover the lien—is correct." *Id.* at 312-13. The Supreme Court extended the same process to state exemptions. *Id.* at 313.

*Owen* instructs the Court to ask, if Redstone did not have a lien on Mr. Whited's property, to which exemption would the Whiteds be entitled under Alabama law on the date of the Whiteds' petition? When the Whiteds filed for bankruptcy, Alabama Code § 6-10-1 provided that "[t]he right of homestead or other exemption shall be governed by the law in force when the debt . . . was created, . . . ." When the Whiteds filed for Chapter 13 bankruptcy, Alabama Code § 6-10-2 provided a $15,000 homestead exemption.[2]

Two Alabama courts have held that a debtor in a mixed debt Chapter 7 case is entitled to the homestead exemption in effect on the date of petition. *Andrews v. Ernandez*, 2017 WL 125040, at *5 (S.D. Ala. Jan. 11, 2017); *In re Middleton*, 544 B.R. 449, 458 (Bankr. S.D. Ala. 2016). In *Middleton*, the Bankruptcy Court found that federal law preempts Alabama Code § 6-10-1 in a mixed debt Chapter 7 case because § 6-10-1 effectively discriminates against similarly situated unsecured creditors. 544 B.R. at 457. The *Middleton* court stated:

---

[2] The debtor or the trustee can withdraw exempt interests in property from the bankruptcy estate. 11 U.S.C. § 522(b)(1). Exempt property is "not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case." 11 U.S.C. § 522(c); *see Owen*, 500 U.S. at 308 ("An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor.").

9

> The priority schemes and equality of treatment in §§ 507(a) and 726(a) and (b) are the foundation of the Bankruptcy Code's goal to fairly distribute a debtor's non-exempt assets among creditors. The Code is designed to achieve an "equality of treatment among similarly situated creditors." *In re Jet Florida System, Inc.*, 841 F.2d 1082, 1083 (11th Cir.1988); "Creditors within a given class are to be treated equally, and bankruptcy courts may not create their own rules of superpriority within a single class." *Matter of Saybrook Mfg. Co., Inc.*, 963 F.2d 1490, 1496 (11th Cir. 1992). This basic tenet of bankruptcy law should not be undermined by state exemption law.

544 B.R. at 456.

The *Middleton* court found that applying the "date of debt" exemption in a mixed debt Chapter 7 case would increase each unsecured creditor's pro rata distribution and thus grant post-amendment creditors a windfall not afforded to the pre-amendment creditors. 544 B.R. at 456.[3] The *Middleton* court found that even if the court apportioned the exemptions to creditors according to when the debts arose, the post-amendment creditors would still receive more than they would have otherwise. *Id.* at 458. In either case, similarly situated unsecured creditors are treated differently than others in violation of federal law. *Id.* at 456 ("There is no basis for dividing unsecured creditors into different classes of distribution based on differing exemption rights.") (quoting *In re Kyle*, 510 B.R. 804, 816 n.15 (Bankr. S.D. Ohio 2014)) (internal marks omitted).

The *Middleton* court decided that the exemption amount on the petition date

---

[3] In a Chapter 7 case, payments of unsecured claims "shall be made pro rata among claims of the kind specified in each such particular paragraph." 11 U.S.C. § 726(b).

controls for four reasons. First, applying the petition date exemption is "consistent with other provisions of the Bankruptcy Code determining the rights of creditors and debtors as of the date of the filing of the petition." *Middleton*, 544 B.R. at 458. For example, pursuant to 11 U.S.C. § 522(b), exemptions are drawn "from property of the estate." The "estate" is created on the petition date. 11 U.S.C. § 541(a).

Second, applying the petition date exemption is "consistent with Congress's intent to allow debtors a 'fresh start' in bankruptcy." *Middleton*, 544 B.R. at 459. In furtherance of the debtor's fresh start, courts must "liberally interpret exemption statutes in favor of the debtor with any doubts to be resolved in favor of allowing the exemption." *Id.* (citing *In re Newton*, 2002 WL 34694092, at *3 (B.A.P. 1st Cir. Jan. 10, 2002); *Christo v. Yellin*, 228 B.R. 48, 50 (B.A.P. 1st Cir. 1999); *In re Gutierrez Hernández*, 2012 WL 2202931, at *2 (Bankr. D.P.R. June 14, 2012); and *In re Hasse*, 246 B.R. 247, 251-52 (Bankr. E.D. Va. 2000)).

Third, applying the petition date exemption is consistent with opinions that raised the same concerns following the last amendment to Alabama Code § 6-10-2 in 1980. *Middleton*, 544 B.R. at 459. For example, in *Goldsby v. Stewart*, the district court found that applying the pre-amendment exemption in a mixed debt case would "depriv[e] the debtor of a larger exemption to which he is entitled, and provid[e] the post[-amendment] creditors a windfall to which they are not

entitled." *Goldsby v. Stewart*, 46 B.R. 692, 694 (S.D. Ala. 1983). In *In re Rester*, the district court rejected split exemptions in mixed debt cases because other courts in Alabama applied the petition date exemption, filing for bankruptcy creates the "estate" from which property is exempted, and applying the lesser exemption would diminish a debtor's fresh start. *In re Rester*, 46 B.R. 194, 199-200 (S.D. Ala. 1984). According to the *Middleton* court, Judge Hand in *Rester* "made clear his preference for a 'date of petition' rule." *Middleton*, 544 B.R. at 459.

Fourth, applying the petition date exemption is consistent with the Alabama Legislature's intent. *Middleton*, 544 B.R. at 459. The *Middleton* court noted that the exemption amount will change every three years and found that "it does not make sense for the legislature to use current inflation as measured by the Consumer Price Index . . . if the revised exemption is to be applied in a bankruptcy which may not take place for a couple of decades." *Id.* at 459-60 (citing Ala. Code § 6-10-12).

In *Andrews v. Ernandez*, the district court agreed with the reasoning in *Middleton*, stating:

> to the extent Alabama Code § 6-10-1 requires debts in the same class to be treated differently because of the date the debts were created, the statute is preempted by the Bankruptcy Code. The Bankruptcy Code sets up priority schemes and requires that debts in the same class be treated equally. Accordingly, unless all of the debts in a Chapter 7 bankruptcy estate were created prior to the amendment, the date of the petition must determine the exemptions to be applied. This conclusion is consistent with 11 U.S.C. § 726(b), with the statement in

> Ala. Code § 6-10-1 that "[t]he adjusted amounts apply to exemptions claimed on or after April 1, following the adjustment date," . . . with the Supreme Court's decision in *Owen* regarding the applicability of exemptions to pre-existing judgment liens, with the Bankruptcy Code's goal of providing a fresh start and with the interests of equitable and orderly distribution.

*Andrews v. Ernandez*, 2017 WL 125040, at *5 (S.D. Ala. Jan. 11, 2017).

The reasoning in *Middleton* and *Andrews* extends to mixed debt Chapter 13 cases. A debtor in a mixed debt Chapter 13 bankruptcy case is entitled to the homestead exemption in force on the date the debtor files her bankruptcy petition. In a mixed debt case, the petition date exemption is consistent with federal law, legislative intent, the debtor's fresh start, and the courts' liberal construction of exemption statutes in favor of the debtor.

Unless all debts arose before June 11, 2015, Alabama Code § 6-10-1 instructs a court to tolerate disparate treatment between creditors in the same class. Unlike Chapter 7, there is no pro rata mandate for payments to unsecured creditors in Chapter 13. In fact, in a Chapter 13 case, the Bankruptcy Code permits discrimination among classes of unsecured creditors, as long as the discrimination is not unfair. 11 U.S.C. § 1322(b)(1). The potential disparate treatment of unsecured creditors is one factor of many that favor the petition date exemption.

Beyond distinguishing between pro rata distribution in Chapter 7 and permissible discrimination in Chapter 13, differentiating between mixed debt Chapter 7 and Chapter 13 cases for purposes of Alabama Code §§ 6-10-1 and -2

would be splitting hairs. The payment of an unsecured claim under Chapter 13 cannot be "less than the amount that would be paid on such claim if the estate of the debtor were liquidated under [Chapter 7]." 11 U.S.C. § 1325(a)(4). A Chapter 13 debtor may convert her case to Chapter 7 at any time. 11 U.S.C. § 1307(a). Cases filed under both chapters must follow the priorities established by 11 U.S.C. § 507. Congress intends for debtors to have a fresh start regardless of whether they file for Chapter 7 or Chapter 13. *See Slater v. United States Steel Corp.*, 871 F.3d 1174, 1179 (11th Cir. 2017). Accordingly, each consideration in *Middleton* and *Andrews* applies equally in Chapter 7 and Chapter 13 mixed debt cases.

2. **Motion to Alter or Amend Judgment**

After the Bankruptcy Court overruled Redstone's objection to the Whiteds' claim of exemption, Redstone asked the Bankruptcy Court to reconsider its decision in light of the Eleventh Circuit's opinion on remand in *In re Owen*, 961 F.2d 170 (11th Cir. 1992). (Doc. 3-8, p. 2). *In re Owen* does not change the Court's decision.

In *Owen v. Owen*, the Supreme Court remanded the case for the Eleventh Circuit to determine whether the lien attached to the debtor's property interest after the debtor obtained the interest. 500 U.S. at 314. The debtor could avoid the lien only if the lien attached after the debtor acquired the property interest. *Farrey v. Sanderfoot*, 500 U.S. 291, 296 (1991).

14

On remand, the Eleventh Circuit found that the creditor recorded its judgment against the debtor before the debtor purchased the condominium subject to the judgment lien. *In re Owen*, 961 F.2d at 172. Thus, the debtor could not avoid the lien because "there was never a fixing of a lien on an interest of the debtor, as the debtor had no property interest prior to the fixing of the lien." *Id.*

Redstone concedes that Mr. Whited acquired his property before Redstone's lien fixed to the property, but Redstone argues that the change in the homestead exemption increased Mr. Whited's interest in the property, so that the lien fixed before Mr. Whited acquired his altered property interest. (Doc. 3-8, p. 2).

The Bankruptcy Court correctly concluded that "the interest to which the Supreme Court was referring was the debtor's fee simple property interest, not a specific value therein." (Doc. 1-3, p. 5); *see In re Owen*, 961 F.2d at 172 (debtor could not avoid a lien because he did not obtain his fee simple interest before the lien fixed); *Farrey*, 500 U.S. at 209 (same). Mr. Whited owned a fee simple interest in his homestead before Redstone's lien attached. (Doc. 1-3, p. 7). The homestead exemption increase did not alter Mr. Whited's fee simple interest. *In re Owen* does not change the analysis under *Owen v. Owen* as to which exemption the Whiteds are entitled under Alabama law. The Bankruptcy Court had no reason to alter its judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Bankruptcy Court's order overruling Redstone's objection to the Whiteds' claim of exemption and **AFFIRMS** the Bankruptcy Court's order denying Redstone's motion to alter or amend judgment.

**DONE** and **ORDERED** this March 27, 2018.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE